NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYN FORST, *et al.*, | Civ. No. 14-2452 |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| LIVE NATION ENTERTAINMENT INC., *et al.*, | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Live Nation Entertainment, Inc., Live Nation Worldwide, Inc., Live Nation Concerts, Inc., and Live Nation Ticketing, LLC (collectively "Live Nation") to Dismiss Plaintiffs' First Amended Complaint.[1] (Doc. No. 11, Mot. Dismiss).  Plaintiffs oppose.  (Doc. No. 14, Opp'n Br.).  The Court has issued the Opinion below based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b).  For the reasons stated herein, Defendants' Motion will be granted without prejudice to Plaintiffs' right to file a further amended complaint.

BACKGROUND

Plaintiffs' putative class action alleges a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*. ("CFA").  More specifically, Plaintiffs claim that Defendants violated N.J.S.A. 56:8-35.1, a provision within the CFA that limits the proportion of event tickets that may be withheld from sale to the general public to five percent.

---

[1] The Complaint also lists non-existent entity "Live Nation Global Touring" as a Defendant.

1

Between January 2012 and December 2013, the four representative Plaintiffs in this suit—Marilyn Forst, Jodi Scrivanic, Marc Yenicag, and Eli Beyda—purchased tickets to popular musical concerts[2] in New Jersey that were promoted by Defendants. (Doc. No. 4, First Am. Compl. at ¶¶ 1, 29-36). As promoters, Defendants were responsible for ticket allocation, ticket sales, and the distribution of tickets for the concerts. (*Id*. at ¶ 6). According to Plaintiffs, Defendants withheld over five percent of tickets to these concerts from the general public, in violation of N.J.S.A. 56:8-35.1. (*Id*. at ¶ 7). Defendants allegedly made deals with brokers or others to purchase large blocks of concert tickets before these tickets were offered to the public. (*Id*. at ¶ 8). As a result, Plaintiffs argue that they were forced to pay substantially higher prices than face value for their tickets on the secondary market. (*Id*. at ¶ 7).

On April 17, 2014 Plaintiffs filed this lawsuit against Defendants. (Doc. No. 1, Compl.). They amended their Complaint on August 4, 2014, alleging a violation of N.J.S.A. 56:8-35.1 and unjust enrichment. (Doc. No. 4, First Am. Compl.). Plaintiffs bring the suit as a class action on behalf of "all persons who purchased tickets or who could not afford to purchase tickets to the Concerts at a ticket price that is higher than the face value of the ticket from a period beginning with the first day tickets went on sale through the date of the concert." (*Id*. at ¶ 11). "Concerts" includes all concerts in New Jersey within the past six years for which Defendants were responsible for ticket allocation and distribution. (*Id*. at ¶ 6). On October 31, 2014 Defendants filed the present Motion to Dismiss Plaintiffs' First Amended Complaint, which Plaintiffs oppose. (Doc. Nos. 11, Mot. Dismiss, 14, Opp'n Br.).

---

[2] These concerts include: One Direction's 2014 Where We Are tour, Bruce Springsteen and the E Street Band's 2012 Wrecking Ball tour, Luke Bryan's 2013 Dirt Road Diaries tour, and Dave Matthews Band's 2013 tour. (Doc. No. 4, First Am. Compl. at ¶ 1).

DISCUSSION

   A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, and the defendant bears the burden of showing that no claim has been presented. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When assessing a Rule 12(b)(6) motion, district courts conduct a three-part analysis, considering only the Complaint and its attached exhibits and matters of public record. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Malleus*, 641 F.3d at 563 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff but may disregard legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Bare allegations of entitlement to relief and demonstrations of a "mere possibility of misconduct" are insufficient; rather, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id.* at 210–11 (quoting *Iqbal*, 556 U.S. at 678–79).

   B. Analysis

      i.     CFA Claim

To state a claim under the CFA, a plaintiff must allege: (1) unlawful conduct by the defendant; (2) ascertainable loss on the part of plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *See Bosland v. Warnock*

3

*Dodge, Inc.*, 197 N.J. 542, 557 (2009). An ascertainable loss is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 605 (3d Cir. 2012). The unlawful conduct alleged here relates to Section 35.1 of the CFA, which provides:

> [i]t shall be an unlawful practice for a person, who has access to tickets to an event prior to the tickets' release for the sale to the general public, to withhold those tickets from sale to the general public in an amount exceeding 5% of all available seating for the event.

N.J.S.A. 56:8-35.1.

*Unlawful Conduct under Section 35.1*

Here, the First Amended Complaint contains only bare, conclusory allegations of unlawful conduct under Section 35.1. Plaintiffs broadly assert without any additional supporting facts that "[u]pon information and belief, Defendants had deals with brokers or others to purchase large blocks of tickets to the Concerts prior to those tickets being offered to the public," and that "[u]pon information and belief, Defendants withheld and continue to withhold more than 5% of tickets to the Concerts from sale to the general public." (Doc. No. 4, First Am. Compl. at ¶¶ 7-8). Such "averments do no more than parrot the language of Section 35.1 and are patently insufficient under *Iqbal*." *Pollard v. AEG Live, LLC*, No. 14-1155 (SRC), 2014 WL 4637017, at *5 (D.N.J. Sept. 16, 2014); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice."). Without any facts[3] to specify the manner in which Defendants allegedly withheld or diverted

---

[3] To the extent Plaintiffs rely on the fact that they paid more than face value for their concert tickets as evidence of Defendants' improper withholding of tickets, this fact alone does not give rise to any inference of misconduct. It is equally plausible that Plaintiffs were forced to pay more than face value for their tickets because high demand caused tickets to sell out before Plaintiffs bought their tickets on the secondary market. *See Pollard*, 2014 WL 4637017, at *6.

4

tickets from the general public, Plaintiffs fail to adequately plead a Section 35.1 violation.  *See Pollard,* 2014 WL 4637017, at \*6–7 (dismissing without prejudice a very similar complaint).

Defendants rely on *Harvey v. GSAC Partners*, the only New Jersey court to interpret Section 35.1, to argue that even if Plaintiffs alleged additional facts to support their Section 35.1 claim, they would still fail to assert a legally cognizable claim because pre-selling tickets does not constitute "withholding" under the statute.  No. L-736-03 (N.J. Super. Ct. Law Div. Mar. 21, 2003).  In that case, defendant Clear Channel, an event promoter, was sued for unlawfully withholding tickets when it arranged for American Express cardholders to have the opportunity to purchase tickets to concerts in New Jersey venues for a limited time before tickets were released to the broader public.  *Id.*  The New Jersey Superior Court held that Clear Channel's conduct in arranging the presale could not be characterized as "withholding" under the statute and therefore granted Clear Channel's motion to dismiss.  *Id.*  Pointing to the *Harvey* ruling, Defendants here assert that providing ticket access to certain groups of people prior to the public sale date is, by itself, not a violation of section 35.1.  (Doc. No. 11, Mot. Dismiss at 12-14).

However, the circumstances in *Harvey* are distinguishable from the present case because the presale to American Express cardholders was strictly controlled and effectively a sale to the public.  Clear Channel did not give or designate tickets to American Express to freely do with them as it chose; rather, American Express was allowed to offer the tickets for sale to its cardholders during the limited three-day presale event.  American Express was not permitted to divert any tickets to a resale market or hold back any tickets from sale.  Tickets were sold through American Express at the regular price without any premiums or discounts, and after the three-day presale ended, all remaining tickets were sold through conventional avenues of sale.

5

Thus, the American Express presale was effectively a sale to a significant subset of the general public for individual consumption.

Here, the Amended Complaint alleges that Defendants sold large blocks of concert tickets to brokers before offering the remaining tickets to the general public. Plaintiffs do not claim that tickets are being sold directly to individual consumers for individual consumption on an as-demanded basis without discounts or premiums, but rather that tickets were sold in pre-determined bulk quantities and unspecified prices to brokers for resale. *Harvey* is thus distinguishable from the present case.

*Ascertainable Loss and Causation*

Though Plaintiffs have failed to plead unlawful conduct under Section 35.1, they have adequately pled the remaining CFA elements of ascertainable loss and causation by alleging that Defendants' ticket diversion resulted in Plaintiffs' being forced to pay prices significantly higher than face value for tickets on the secondary market. The cases that Defendants rely on to refute ascertainable loss and causation are distinguishable since they involved violations of a different substantive provision of the CFA and arose under different factual circumstances. Those cases concerned a defendant's alleged misrepresentations about a product's characteristic but no measureable loss in value of the product could be demonstrated. *See, e.g.*, *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257 (3d Cir. 2010) (lipstick contained trace amounts of lead that plaintiff deemed unacceptable); *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007) (bed sheets had a lower thread count than represented); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (beverage was marketed to seem healthy but was not); *Franulovic v. Coca-Cola Co.*, No. 07-539 (RMB), 2007 WL 3166953 (D.N.J. Oc. 25, 2007) (beverage was marketed with unsubstantiated weight loss claims).

Here, Plaintiffs are not alleging any misrepresentation by Defendants nor any unfulfilled expectations with respect to the concerts. Instead, Plaintiffs claim that Defendants wrongfully manipulated the market for concert tickets, resulting in Plaintiffs' paying inflated prices for their tickets, which is a quantifiable "out-of-pocket loss."[4] *See Marcus*, 687 F.3d at 605 (defining ascertainable loss as an out-of-pocket loss or measurable loss in value).

Defendants also argue that Plaintiffs' "price inflation" theory fails because "where the causal nexus between the alleged injury and a defendant's alleged wrongdoing runs through a market subject to multiple independent forces, the causal nexus is too attenuated for the theory to apply." (Doc. No. 17, Reply Br. at 9). But the cases that Defendants rely on for this proposition are distinguishable because they addressed an alleged misstatement in the marketing or advertising context that supposedly caused prices to rise. *See, e.g., N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 16 (App. Div. 2003); *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 554 (Sup. Ct. 2003). Whereas the causal relationship between a misstatement about a product and the product's price may be more attenuated, Plaintiffs are alleging that Defendants directly manipulated the ticket market by selling large blocks of tickets to brokers, thus reducing the supply of tickets available to the general public and thereby driving up ticket prices. Plaintiffs' claim that Defendants' alleged violation of Section 35.1 caused them to overpay for their tickets is premised "on the basic economic reality of supply and demand." *See Pollard*, 2014 WL 4637017, at *6 (rejecting the causation argument Defendants assert here and finding instead that plaintiffs sufficiently pled causation).

---

[4] In addition, Defendant' Motion brief cites cases stating that a CFA claim is not asserted solely by a claim of excessive prices. (Doc. No. 11, Mot. Dismiss at 16-17). However, those cases are distinguishable because there was no other illegal conduct alleged, whereas here, Plaintiff is asserting a violation of Section 35.1 that caused higher prices.

7

Accordingly, Count I of the First Amended Complaint will be dismissed without prejudice and with leave to further amend if Plaintiffs are able to correct the deficiencies discussed above.

ii. Unjust Enrichment Claim

Unjust enrichment "is not an independent theory of liability, but is the basis for a claim of quasicontractual liability." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008). To assert the equitable remedy of unjust enrichment in New Jersey, "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110 (2007). In addition, the plaintiff must also show that he or she "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id*. (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994)). Lastly, because unjust enrichment is a form of quasi-contractual liability, there must be a sufficiently direct relationship between the parties to support the plaintiff's claim that a benefit was conferred on the defendant. *See Snyder v. Farnan Co., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) ("When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer."); *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196–202 (D.N.J. June 29, 2012) (The requirement that "some direct relationship exist between the parties is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims.").

Here, Plaintiffs have not asserted any unjust benefit to Defendants, and the facts alleged do not support the existence of any quasi-contractual or direct relationship between the parties.

8

Plaintiffs purchased their tickets from unidentified parties on the "secondary market" rather than from Defendants, and Plaintiffs do not allege any other relationship with Defendants. (Doc. No. 4, First Am. Compl. at ¶ 7). Moreover, even if a sufficiently direct relationship could be demonstrated, which Plaintiffs have not done at this point, there is no assertion that Plaintiffs failed to receive their "expected remuneration" from the ticket purchase, "nor is there any indication that such remuneration would be at issue in a ticket purchase transaction." *See Pollard*, 2014 WL 4637017, at *7. The circumstances alleged do not support a claim of unjust enrichment, and Plaintiffs' "attempt to re-frame the misconduct and injury underlying [their] NJCFA claim" into an unjust enrichment claim is unavailing. *Id*. (dismissing with prejudice an unjust enrichment claim based on ticket withholding under Section 35.1). Therefore, Count II of Plaintiffs' First Amended Complaint will be dismissed with prejudice.

      iii.      Class allegations

Lastly, Defendants claim that Plaintiffs' class allegations with respect to non-purchasers should be stricken because non-purchasers lack standing and are not ascertainable. Federal Rule of Civil Procedure 23 governs class actions and permits courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Generally plaintiffs are entitled to conduct discovery relating to Rule 23's class certification requirements; thus, motions to strike class allegations filed before discovery are usually inappropriate and premature. *See McPeak v. S-L Distrib. Co.*, No. 12-348 RBK/KMW, 2014 WL 4388562, at *3-4 (D.N.J. Sept. 5, 2014) (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011)). However, in the rare case, if it is clear from the face of the complaint that plaintiff cannot meet

the Rule 23 requirements and no amount of discovery could correct the deficiencies, the court may grant pre-discovery motions to strike or dismiss class allegations. *Id.* at *4, 7.

One requirement of class certification is that the plaintiff "must show by a preponderance of the evidence that the class is ascertainable." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013). There are two important elements of ascertainability. *Id.* at 355. First, the class must be defined using objective criteria, and second, there must be a reliable and administratively feasible method for assessing whether putative class members fall within the class definition. *Id.* A class is not ascertainable if "class members are impossible to identify without extensive and individualized fact-finding or mini-trials." *Carrera v. Bayer Corp.*, 727 F.3d 300, 303–04 (3d Cir. 2013). Ascertainability not only reduces administrative burdens and provides the best practicable notice to absent class members, but it also protects the due process rights of defendants. *See Royal Mile Co. v. UPMC*, No. 10-1609, 2014 WL 4187129, at *23-24 (W.D. Pa. Aug. 21, 2014) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) and *Carrera*, 727 F.3d at 307). "Ascertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." *Id.* at *24; *see also Marcus*, 687 F.3d at 594 ("Forcing [Defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").

Here, non-purchasers must be stricken from the class allegations because they are not ascertainable. There appears to be no reliable and administratively feasible means of identifying non-purchasers who would have bought concert tickets but for Defendants' allegedly unlawful conduct. Although Plaintiffs assert that discovery is needed to properly determine ascertainability, no amount of discovery would make non-purchasers ascertainable under Rule

10

23. *See Marcus*, 687 F.3d at 593 (explaining that "where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails"). Courts have previously rejected Plaintiff's proposed methods of identifying the class—relying on a non-purchaser's affidavits and internet history—as they amount to identifying class members on nothing more than their "say so." *Marcus*, 687 F.3d at 594 (requiring that a method for ascertaining class membership be based on more than simply "potential class members' say so"); *Stewart*, 2014 WL 2920806, at *12-13 (rejecting plaintiffs' proposal to use affidavits and social media postings to ascertain class membership). Therefore the Court will strike with prejudice non-purchasers from Plaintiffs' class allegations.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss will be granted. Count I of Plaintiffs' First Amended Complaint will be dismissed without prejudice, and Count II will be dismissed with prejudice. In addition, references to non-purchasers in Plaintiffs' class allegations shall be stricken with prejudice. Plaintiffs will be granted leave to further amend their Complaint within thirty days if they are able to correct the deficiencies outlined above. An appropriate Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
