UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYN FORST, *et al.*,

Plaintiffs,

v.

LIVE NATION ENTERTAINMENT INC.,
*et al.*,

Defendants.

Civ. No. 14-2452

**OPINION**

R E C E I V E D

JUL 2 7 2015

AT 8:30_____M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Live Nation

Entertainment, Inc., Live Nation Worldwide, Inc., Live Nation Concerts, Inc., and Live Nation

Ticketing, LLC (collectively "Live Nation" or "Defendants") to Dismiss Plaintiffs' Second

Amended Complaint (the "SAC").[1]  (Mot. Dismiss, ECF No. 22.)  Plaintiffs oppose. (Pl.'s

Opp'n, ECF No. 27.)  The Court has issued the Opinion below based on the parties' written

submissions and without oral argument pursuant to Local Civil Rule 78.1(b).  For the reasons

stated herein, Defendants' Motion will be granted.

BACKGROUND

Plaintiffs bring a class action lawsuit against Live Nation, asserting a single claim—

violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA").

Specifically, Plaintiffs claim that Defendants violated N.J.S.A. 56:8-35.1 ("Section 35.1"), a

provision that limits the fraction of event tickets that may be withheld from sale to the general

---

[1] "Live Nation Global Touring" appears to be a non-existent entity included as a Defendant in
the Second Amended Complaint.

1

public to no more than five percent. The four named Plaintiffs in this suit—Marilyn Forst, Jodi Scrivanic, Marc Yenicag, and Eli Beyda—allege that they purchased tickets to the following music concerts in New Jersey: One Direction's August 4, 2014 MetLife Stadium concert, Bruce Springsteen's April 3, 2012 Izod Center concert, Luke Bryan's August 24, 2013 PNC Bank Arts Center concert, and Dave Matthews Band's June 6, 2013 PNC Bank Arts Center concert. Live Nation was the promoter for all four concerts and thus responsible for ticket allocation and sales for these concerts. According to Plaintiffs, Defendants engage in a general practice of withholding more than five percent of concert tickets from the general public by reserving large blocks of tickets for brokers, venues, artists, and ticketing companies who then resell the tickets on the secondary market at higher prices. These brokers and ticketing companies allegedly pay premiums to Defendants in order to access the best concert seats prior to their availability to the general public. Plaintiffs argue that Defendants, by limiting the number of tickets for direct sale to the general public, have caused injury to Plaintiffs by forcing them to pay higher prices for concert tickets. To support their claims of Defendants' unlawful ticket withholding practices Plaintiffs allege that Defendants withheld over fifteen percent of the tickets to a July 2013 Beyoncé concert at Boardwalk Hall, eighty-four percent of the tickets to a March 2013 Pink concert at the Izod Center, and sixty-seven percent of the tickets to a July 2013 One Direction concert at the Izod Center. Notably however, the named Plaintiffs did not purchase tickets to any of these three concerts.

Plaintiffs assert that Defendants have violated N.J.S.A. 56:8-35.1 by withholding over five percent of concert tickets from sale to the general public. They bring a putative class action suit on behalf of themselves and all others who have purchased tickets in the past six years to New Jersey concerts promoted by Defendants. On February 27, 2015 this Court granted without

2

prejudice Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  (Order, ECF No.

19.)  Thereafter Plaintiffs filed the SAC on March 27, 2015.  (Second Am. Compl., ECF No. 20.)

On April 24, 2015 Defendants filed the present Motion to Dismiss Plaintiffs' SAC under Federal

Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6) a court must accept all well-pleaded

factual allegations in the complaint as true, construe the complaint in the light most favorable to

plaintiff, and then determine whether the complaint "state[s] a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Malleus v. George*, 641 F.3d 560, 563 (3d

Cir. 2011); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  With respect to this

plausibility standard, demonstrations of a "mere possibility of misconduct" are insufficient;

instead, the facts pleaded must allow a court reasonably to infer "that the defendant is liable for

the misconduct alleged." *Fowler*, 578 F.3d at 210–11 (quoting *Iqbal*, 556 U.S. at 678–79).

However, while a plaintiff must specify the grounds establishing entitlement to relief by

providing more than bare conclusory allegations, detailed factual allegations are not required.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The defendant bears the burden of

showing that no claim has been asserted by the plaintiff. *See Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005).

### B. Analysis

To state a NJCFA claim, a plaintiff must allege sufficient facts to establish: (1) unlawful

conduct by the defendant; (2) ascertainable loss suffered by the plaintiff; and (3) a causal

relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  *See*

3

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 542, 557 (2009); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007).  Here, Defendants' allegedly unlawful conduct violates Section 35.1 of the NJCFA, which provides:

> [i]t shall be an unlawful practice for a person, who has access to tickets to an event prior to the tickets' release for the sale to the general public, to withhold those tickets from sale to the general public in an amount exceeding 5% of all available seating for the event.

N.J.S.A. 56:8-35.1.

Live Nation advances two primary arguments for dismissing Plaintiffs' SAC.  First, Defendants argue that Plaintiffs offer nothing but bare conclusory allegations and labels to support the claim that Defendants violated Section 35.1.  Defendants assert that specific factual allegations have been pleaded only with respect to three concerts to which none of the four named Plaintiffs purchased tickets.  Second, Defendants argue that because the four named Plaintiffs did not buy tickets to those three concerts, they lack standing to bring class claims of ticket withholding as to those concerts.[2]

Plaintiffs argue that they have satisfied the pleading standard by specifying the nature of Defendants' unlawful conduct, the manner in which such conduct was carried out, and the harm it caused to Plaintiffs.  Essentially, Plaintiffs allege that (1) Defendants withheld fifteen, sixty-seven, and eighty-four percent of tickets at three concerts not attended by the named Plaintiffs; (2) these three concerts reflect Defendants' general practice of withholding more than five percent of concert tickets to all concerts that Defendants promote; (3) in light of this general practice, Defendants have withheld over five percent of tickets to the four concerts to which the named Plaintiffs purchased tickets; and (4) as a result of Defendants' general withholding

---

[2] Since the Court will grant Defendants' Motion under Rule 12(b)(6), it will not address this argument.

practice, Plaintiffs were forced to pay significantly higher prices than face value for their concert tickets.

However, without any specific factual allegations regarding the concerts for which Plaintiffs actually purchased tickets, Plaintiffs' claims are speculative, demonstrating only a mere possibility of misconduct rather than furnishing an adequate basis for the court to draw a reasonable inference that Defendants are liable for the conduct alleged. The SAC includes no facts to support a claim of withholding at the four specific concerts Plaintiffs attended. It identifies no alleged deals between Defendants and brokers or other entities, nor does it specify any alleged proportion of tickets withheld beyond the five percent statutory requirement. The only factual allegations provided to support unlawful withholding are the high prices Plaintiffs paid for their tickets and the alleged withholding of tickets at other concerts. As stated in the Court's February 27, 2015 Memorandum Opinion, high prices "alone do[] not give rise to any inference of misconduct." (Order at 4 n.3, ECF No. 18.) "It is equally plausible that Plaintiffs were forced to pay more than face value for their tickets because high demand caused tickets to sell out before Plaintiffs bought their tickets on the secondary market." (*Id.*) And it does not seem reasonable to infer or generalize a broad policy of ticket withholding by Defendants merely from allegations concerning three different and unrelated concerts. After all, those three concerts and the four concerts attended by Plaintiffs span a variety of artists and venues and occurred in different months in 2013 and 2014. Thus, Plaintiffs have failed to allege facts to support a plausible claim of unlawful ticket withholding with respect to the four concerts they attended. While courts have sometimes relaxed the pleading standards where specific factual information is in the defendant's exclusive possession or control, the plaintiff must still allege sufficient facts to make its claim plausible. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418

5

(3d Cir. 1997); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 607 (D.N.J. 2014). However, any argument for leniency on these grounds is undermined here by the fact that Plaintiffs did manage to obtain some specific information relating to Defendants' alleged ticket withholding at three other concerts.

In addition, the cases cited by Plaintiffs in their brief do not save the SAC. *Pollard v. AEG Live, LLC*, is another Section 35.1 ticket withholding lawsuit very similar to the present case. No. 14-1155 (SRC), 2014 WL 4637017 (D.N.J. Sept. 16, 2014). In *Pollard*, the Court granted a motion to dismiss without prejudice, the plaintiff filed an amended complaint, and discovery is currently proceeding. However, the case is not particularly persuasive since, unlike the present case, the *Pollard* defendants did not renew their motion to dismiss, and thus the Court had no opportunity to evaluate the adequacy of the plaintiff's amended complaint. In *Harnish v. Widener Univ. School of Law*, the Court declined to dismiss a putative class action lawsuit brought by eight alumni of Widener Law School. 931 F. Supp. 2d 641 (2003). These Widener Law alumni alleged that the employment statistics disseminated by the school on its website and in other marketing materials were misleading and false in violation of the NJCFA. *Id.* at 648. Even though the Court noted that the plaintiffs did not allege specific supporting facts beyond identifying the statistics and statements alleged to be false, the Court nevertheless denied the law school's motion to dismiss, stating that "[w]hile the thread of plausibility may be slight, it is still a thread." *Id.* at 648, 651. However, *Harnish* is distinguishable from the present case because it involved a very different NJCFA provision, one that bars misleading and deceptive business conduct outside the norm of reasonable business practices. Unlike Section 35.1, such a standard implicates subjective judgments less dependent on specific factual assertions.

6

Similarly, *Luppino v. Mercedes-Benz USA, LLC* involves a different type of claim not analogous to the present case. No. 09-5582 (DMC)(JAD), 2010 WL 3258259 (D.N.J. 2010). *Luppino* was a products liability case involving three plaintiffs who had purchased or leased a Mercedes vehicle with allegedly defective rims. *Id.* at \*1. The Plaintiffs alleged that Mercedes designed, distributed, marketed, warranted, and sold these rims and that in the course of doing so made material misrepresentations about the rims in violation of the NJCFA. *Id.* To support the allegation that the rims were defective, the plaintiffs relied upon various complaints filed with the National Highway Transportation Safety Administration demonstrating that the rims fail regularly under normal driving conditions. *Id.* at \*2. Here Plaintiffs rely on *Luppino* for the assertion that a "named plaintiff[] may rely upon the allegations of absent class members to establish a defendant's unlawful course of conduct, so long as these allegations are not used to fulfill the elements of a named class member's personal cause of action, or to fulfill that individual standing requirement." (Pl.'s Opp. Br. at 20, ECF No. 27.) However, a products liability suit involves specific products that all members of the class have purchased. Defects found in a subset of these products can be an indicator of broader defects in identical or similarly manufactured products. Thus, it may be reasonable for a plaintiff who purchased a product to infer from the failure of that same product in the hands of other absent purchasers that the plaintiff's product is also similarly defective. Such a situation stands in stark contrast to the circumstances of the present case, where Plaintiffs ask the Court to generalize a broad practice of ticket withholding not with respect to a specific artist or venue or time period, but rather across all artists who performed concerts at all venues in New Jersey in the past six years. Indeed, to the extent that tickets are withheld and reserved for specific artists and venues, as Plaintiffs

7

allege, one would expect non-uniform practices across concerts.  Thus, *Luppino* is also distinguishable from the present case.

In short, Plaintiffs have failed to plead a sufficient factual basis to support their specific claims of a Section 35.1 violation.  At this point, Plaintiffs have had previous opportunities to correct any such deficiencies and their failure to do so suggests that an additional opportunity would be futile.  The fact that Plaintiffs were able to plead some specific supporting facts for three other concerts but not for the four concerts that Plaintiffs attended further supports a finding of futility.  Thus, the SAC will be dismissed.

CONCLUSION

For the reasons above, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint will be granted.  An appropriate Order follows.

ANNE E. THOMPSON, U.S.D.J.